**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Herbert BEASLEY, Defendant-Appellant.**

**No. 72–2197**

**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

April 13, 1973.

Rehearing Denied June 4, 1973.

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of N.Y. 431 F.2d 409, Part I (5th Cir. 1970).

Herbert Beasley, pro se.

William H. Stafford, Jr., U. S. Atty., Pensacola, Fla., Stewart J. Carrouth, Asst. U. S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

CLARK, Circuit Judge:

On December 21, 1971, the Leon Federal Savings and Loan Association, University Branch, in Tallahassee, Florida, was robbed at gunpoint of 1,313 dollars. Herbert Beasley was first tried on the charge of robbing this federally-insured savings and loan association in February 1972. The first prosecution ended in a mistrial. Beasley was subsequently retried and convicted. He appeals. We affirm.

### Double Jeopardy

Beasley contends that his second trial should have been barred by the Fifth Amendment protection against double jeopardy. Beasley's first trial ended in

a mistrial as a result of a single question put to the defendant's chief alibi witness during cross-examination. On direct examination, Rebecca McCardell, Beasley's sister, testified that she regularly knew of the defendant's whereabouts and, in fact, had seen him in Houston, Texas, at the exact hour when, according to the government's case, Beasley was engaged in robbing Leon Federal in Tallahassee. During cross-examination the prosecutor closely questioned Mrs. McCardell concerning her claim that she normally knew of her brother's whereabouts. Among the questions posed to Mrs. McCardell was the following: "On October 27, 1971, did the FBI visit you and advise you of the Harboring Statute?" The defendant promptly objected to the question on the ground of relevancy. The court ruled the question inadmissible and promised to give an admonitory instruction to the jury. Defense counsel then moved for a mistrial on the basis that the prosecutor's question was already in the record and "is so highly prejudicial to the defendant that I do not believe he can get a fair trial from this jury." Thereupon, a mistrial was granted.

■ We note at the outset that the mistrial was granted in response to defendant's motion. "[A] motion by the defendant for mistrial is ordinarily assumed to remove any barriers to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." United States v. Jorn, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L. Ed.2d 543 (1971); United States v. Iacovetti, 466 F.2d 1147 (5th Cir. 1972),

cert. denied, 410 U.S. 908, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973); Vaccaro v. United States, 360 F.2d 606 (5th Cir. 1966). An exception to the waiver of the right against reprosecution exists, however, when the mistrial motion is the product of prosecutorial overreaching, United States v. Jorn, *supra;* Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). The accused has a "valued right to have his trial completed by a particular tribunal." Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949).[1] It would be offensive to the fundamental constitutional guarantee against successive, oppressive prosecutions, if the government, at a trial in which its case is going badly, could by gross misconduct precipitate a mistrial and thereby gain "another, more favorable opportunity to convict the accused." Gori v. United States, 367 U.S. 364, 369, 81 S.Ct. 1523, 1526–1527, 6 L.Ed.2d 901 (1961). At the same time, Wade v. Hunter, *supra,* makes it clear that when a mistrial results from prosecutorial error which does not amount to gross negligence or intentional misconduct, the state is not barred from reprosecuting the defendant.

The double-jeopardy provision of the Fifth Amendment . . . does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed.

[1]. The Supreme Court frequently explained that the double jeopardy clause protects two important interests of the criminal defendant: (1) the right to have guilt or innocence determined by the particular jury then empanelled, and (2) the right to be free from harassing multiple prosecutions for the same offense.

The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

Green v. United States, 355 U.S. 184, 187–188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1958).

336 U.S. at 688–689, 69 S.Ct. at 837.[2]

■ The appellant argues that the prosecutor by asking a baseless and inflammatory question, precipitated a mistrial to rescue an inadequate prosecution before the case went to the jury. Our review of the record discloses no evidence of gross negligence or intentional misconduct such as would bar reprosecution. The question directed to Mrs. McCardell, although undoubtedly improper because it suggested that the defendant had been a fugitive from justice as a result of some undisclosed crime two months prior to the Tallahassee robbery, was part of a legitimate line of cross-examination calculated to impeach the witness's testimony that she regularly knew of the defendant's whereabouts. The fact that the government attorney later stated to defense counsel that he was not displeased with a mistrial does not prove that the prosecutor intended to abort the proceedings in order to improve the chance of a conviction on retrial. The record as a whole indicates that the district attorney preferred to continue with the first trial. Since the prosecution presented virtually the same witnesses and evidence at both trials, there is no evidence that the mistrial allowed the state an opportunity to strengthen its case. *Compare* Downum v. United States, *supra*.

■ Our decision that a second trial of the defendant is not barred by the Fifth Amendment is supported by the recent opinion in Somerville v. Illinois, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). The Court there upheld a second-trial conviction where the first jury had been dismissed at the insistence of the state, over defendant's objection, following the discovery of a defect in the drafting of the indictment. *Somerville* stands for the proposition that mistrial which is the result of official error not involving "prosecutorial manipulation", 410 U.S. at 464, 93 S.Ct. at 1070, does not bar retrial even where the defendant does not consent to the termination of the first trial short of judgment. In the present case the defendant moved for a mistrial, and since this motion was not the product of prosecutorial manipulation or overreaching, we find no constitutional barrier to retrial and conviction.

### The Search

The appellant also contends that a silver-plated cap pistol found in his overcoat pocket at the time of his arrest was improperly admitted into evidence.

Beasley's arrest occurred on a frosty January night in a roadside park near Wichita, Kansas. A state highway patrolman, having observed the defendant's automobile parked overnight in the rest area, made a routine check of its license number through the National Crime Information Center computer. The check revealed that the tag number and description corresponded to those of the vehicle used in the Tallahassee robbery and that an arrest warrant had been issued for its owner, Herbert Beasley. Having summoned assistance, the patrolman approached the car and arrested the defendant who was asleep in the front seat. While questioning the

---

2. In Tateo v. United States, 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964), the Supreme Court commented:
   Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubt-

   ful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendant's rights as well as society's interest.
   Similar policy considerations apply to the decision of a trial court to grant a mistrial at the request of the defendant.

suspect at the scene of the arrest, one of the officers reached into the backseat and obtained the defendant's overcoat to protect him from the night's chill. Before placing the coat over the hand-cuffed suspect's shoulders, the patrol-man searched the pockets and discovered the pistol.[3]

■ We have no difficulty in uphold-ing the search procedures which led to the seizure of the pistol. According to testimony of the arresting officer, which we credit here over a conflicting version told by the defendant, the coat was in plain view, the night was cold, and the suspect had asked for his overcoat.[4] At the time of the arrest the patrolmen knew that they were dealing with an in-dividual wanted for armed robbery. A limited search for weapons prior to handing the garment to the defendant was completely reasonable for the offi-cers' self-protection. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); United States v. Edwards, 469 F.2d 1362, 1366 (5th Cir. 1972).

### The Second Trial

Beasley also complains of several al-leged errors relating to his second trial. First, he asserts that he was denied the right to subpoena essential witnesses at government expense. Prior to the sec-ond trial the defendant sought to sub-poena 16 witnesses. After a hearing, the court agreed to permit him to subpoe-na five individuals who could furnish al-ibi testimony. The court denied subpoe-nas for six additional witnesses who as-sertedly could testify to Beasley's gener-al residency in Houston, Texas, but who could add nothing to his specific alibi.

Four custodial witnesses were sought for the purpose of introducing exculpa-tory evidence seized during the Kansas arrest. Although these witnesses were not subpoenaed, such favorable evidence as they could have produced was intro-duced through an FBI agent who testi-fied as a defense witness. The motion also sought to subpoena the attorney who had represented Beasley at the first trial to testify on his double jeopardy motion. The record shows that Beas-ley's present counsel abandoned this re-quest and that the testimony had al-ready been presented to the court in af-fidavit form.

■■ District courts have wide dis-cretion to determine which witnesses re-quested by an indigent defendant should be subpoenaed at government expense and its decision will not be disturbed ex-cept in cases of clear abuse. Taylor v. United States, 329 F.2d 384, 386 (5th Cir. 1964). In the present case, the court granted subpoenas for the primary witnesses sought by the defendant. Those not subpoenaed would have pro-vided testimony which was cumulative or immaterial to the defense. Thus there was no violation of F.R.Crim.P. 17(a) or the Sixth Amendment. United States v. Deaton, 468 F.2d 541, 544 (5th Cir. 1972); Thompson v. United States, 372 F.2d 826, 828 (5th Cir. 1967).

■ Beasley next contends that the jury charge was defective because the court failed to instruct the jury that the presence of the defendant at the time and place of the offense was an essential element to be proved by the government, thereby placing the burden of proof in regard to alibi on the defendant. To

---

3. The cap pistol was subsequently iden-tified by the victimized teller as similar in appearance to the weapon employed by the robber of Leon Federal. No other evi-dence found on the defendant's person or vehicle at the time of his arrest was intro-duced into evidence by the government.

4. We find no merit to appellant's sug-gestion that, in view of the available al-ternative of placing him in the heated patrol car, obtaining his overcoat was

a pretextual subterfuge to conduct a war-rantless search of his personal effects. The officer is entitled to have his actions judged in the light of reasonableness under the existing circumstances rather than in the light of hindsight. It was not in the slightest degree unreasonable to grant the request for the warmth of the coat without suggesting that entering the patrol car might be a less intrusive means of achieving comfort.

the contrary, the jury was generally instructed that the government must prove beyond a reasonable doubt that the defendant committed the robbery at the Leon Federal. Furthermore, the court's express instructions on the alibi defense required the jury to find beyond a reasonable doubt that the defendant was present at the time and place of the alleged crime. The charge included proper instructions on each essential element of the offense.

The appellant's further allegations of improper jury instructions, prejudicial intrusions by the court during the trial, and testimonial argument by the prosecutor are without merit.

Finally, Beasley asserts that he was denied effective assistance of counsel. At several points, both before and during the trial, the defendant requested the court to dismiss his counsel and to allow him to proceed *pro se*. However, on each occasion after consultation with the court, the defendant expressed confidence in his appointed counsel and withdrew his request for dismissal. There is no evidence to support the allegation that the court forced the defendant to accept counsel against his will.

It is clear that effective counsel includes a right to more than *pro forma* or perfunctory representation. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). However, effective counsel does not mean "errorless counsel" but rather "counsel reasonably likely to render *and rendering* reasonably effective assistance." MacKenna v.

Ellis, 280 F.2d 592, 599 (5th Cir.), modified 5 Cir., 289 F.2d 928, cert. denied, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed. 78 (1960); Brown v. Beto, 377 F.2d 950, 957–958 (5th Cir. 1967); King v. Beto, 429 F.2d 221, 225 (5th Cir. 1970).

Appellant's principal contentions are that his court-appointed attorney failed to adequately prepare for trial, followed a trial strategy with which the defendant disagreed, and did not present the defense case in its best possible light in argument to the jury. Beasley also alleges that he was prejudiced because his court-appointed counsel failed to consult with him prior to the hearing on the motion to subpoena essential witnesses and that counsel permitted the introduction of inadmissible search evidence.[5] The trial record not only refutes each of Beasley's allegations, but convincingly demonstrates that appellant's appointed counsel presented an adequate defense for a difficult client.

Affirmed.

## ON PETITION FOR REHEARING

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

PER CURIAM:

IT IS ORDERED that the petition for rehearing filed in the above entitled and numbered cause be and the same is hereby denied. The alternative petitions for appointment of counsel to perfect a petition for a writ of certiorari and for stay of mandate pending petition for a writ of certiorari is denied. See Fifth Circuit Local Rule 15.

---

5. In light of our holding in regard to the legality of the search, this latter allegation cannot form the basis for a claim of ineffective representation.