STATE of North Dakota, Plaintiff-Appellant,

v.

Mario J. ALLESI, Defendant-Appellee.

Crim. No. 456.

Supreme Court of North Dakota.

March 27, 1974.

David R. Bossart, Asst. State's Atty., Fargo, for plaintiff-appellant.

Mark R. Fraase, Fargo, for defendant-appellee.

ERICKSTAD, Chief Justice.

This is an appeal by the plaintiff, State of North Dakota, from an order of the District Court for the First Judicial District, which dismissed the charge against the defendant, Mario J. Allesi, and discharged him from custody. In an earlier decision, State v. Allesi, 211 N.W.2d 733 (N.D.1973), Allesi made a motion for a

dismissal of the State's appeal, which we denied. We held that the action of the district court in entering an order dismissing the charge and discharging the defendant was error, that such action in effect quashed the information, and that the State under Section 29–28–07, N.D.C.C., could appeal to this court.

As a result of information supplied by Jerome Dale Hanson, an agent of the State Crime Bureau, detective Robert Fahey of Fargo, on April 25, 1973, filed a criminal complaint charging Allesi with the delivery of the controlled substance methamphetamine, in violation of Sections 19–03.1–09 and 19–03.1–23, N.D.C.C.

The language of Section 19–03.1–09, dealing with methamphetamine, is material to the resolution of one of the issues on appeal.

"19–03.1–09. Schedule III.—

"1. The controlled substances listed in this section are included in schedule III.

"2. Any material, compound, mixture, or preparation which contains any quantity of the following substances having a potential for abuse associated with a stimulant effect on the central nervous system:

\* \* \* \* \* \*

"c. Any substance which contains any quantity of methamphetamine, including its salts, isomers, and salts of isomers;

\* \* \* \* \* " N.D.C.C.

Following a preliminary hearing conducted in Cass County Court on May 8, 1973, Allesi was bound over to district court on the delivery charge. His trial commenced on May 14, 1973, in Cass County District Court, Fargo, North Dakota.

A jury was duly empaneled and sworn to hear the case. The State called three witnesses, Jerome Dale Hanson, detective Robert Fahey, and David Shelton, a chemist with the North Dakota State Toxicology Laboratory. Hanson testified as to the details of the alleged delivery and the subsequent turning over of the suspected controlled substances to detective Fahey. Detective Fahey testified as to his receipt and marking of the substances and his subsequent delivery of such substances to David Shelton at the State Toxicology Laboratory. Shelton testified as to the chemical tests he performed before identifying the substances as methamphetamine. Shelton testified that methamphetamine is used as a stimulant and that it stimulates the central nervous system, including the brain and other organs. On cross-examination he said that he had made no quantitative tests to determine the amount of methamphetamine present and that he could not state that there was sufficient methamphetamine present in the packages he examined to stimulate a human being. At the conclusion of Shelton's testimony, the State rested.

After the State had rested and out of the presence of the jury, the defendant, through his attorney, made a motion for an advised verdict of acquittal on the grounds that the State failed in its burden of proof and failed to prove a prima facie case. Instead of ruling on that motion, the trial court dismissed the case, saying in effect that Section 19–03.1–09(2)(c) required the State to prove: (1) the quantity of methamphetamine in the drugs sold, (2) that methamphetamine has a potential for abuse, and (3) that methamphetamine is a stimulant to the central nervous system, and that the State had failed to so prove.

Having previously determined that the trial court erred in dismissing the case, we must now determine whether the reasons it gave would have justified the granting of the motion for an advised verdict.

Shelton testified he found methamphetamine in the substances delivered to him and that methamphetamine is a stimulant. No testimony was received establishing the

quantity of methamphetamine or that the methamphetamine actually had a potential for abuse.

■ The State contends that under Section 19–03.1–09(2)(c), N.D.C.C., methamphetamine in any quantity has been declared a controlled substance and that it is illegal to deliver it in any quantity under Section 19–03.1–23(1)(b), N.D.C.C. The latter section reads:

"1. Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. Any person who violates this subsection with respect to:

\* \* \* \* \* \*

"b. any other controlled substance classified in schedule I, II, or III, is guilty of a crime and upon conviction may be imprisoned for not more than ten years, or fined not more than five thousand dollars, or both;"

With this contention of the State we agree.

The State asserts a prima facie case of delivery of a controlled substance was established through the testimony of its witnesses. Hanson testified that Allesi sold and delivered drugs to him for $58. Fahey testified that he delivered those drugs to Shelton for examination. Shelton testified that he analyzed the drugs delivered to him by Fahey and found that they contained methamphetamine.

The Uniform Controlled Substances Act, Chapter 19–03.1, N.D.C.C., was enacted by the Legislature in 1971. Methamphetamine was initially included by the Legislature in Schedule III, Section 19–03.1–09(2)(c), N.D.C.C. That section has not been amended, nor has the North Dakota State Laboratories Department deleted or rescheduled methamphetamine pursuant to Section 19–03.1–02, N.D.C.C. The Legislature initially determined which substances were to be controlled and placed them in respective schedules, with Schedule I containing the most dangerous and Schedule IV containing the least dangerous drugs.

Section 19–03.1–02 reads:

"Authority to control.—

"1. The North Dakota state laboratories department shall administer this chapter and may add substances to or delete or reschedule all substances enumerated in the schedules in sections 19–03.1–05, 19–03.1–07, 19–03.1–09, 19–03.1–11, or 19–03.1–13 pursuant to the procedures of chapter 28–32 of the North Dakota Century Code. In making a determination regarding a substance, the state laboratories department shall consider the following:

"a. the actual or relative potential for abuse;

"b. the scientific evidence of its pharmacological effect, if known;

"c. the state of current scientific knowledge regarding the substance;

"d. the history and current pattern of abuse;

"e. the scope, duration, and significance of abuse;

"f. the risk to the public health;

"g. the potential of the substance to produce psychic or physiological dependence liability; and

"h. whether the substance is an immediate precursor of a substance already controlled under this chapter.

"2. After considering the factors enumerated in subsection 1, the state laboratories department shall make findings with respect thereto and issue a rule controlling the substance if it finds the substance has a potential for abuse.

"3. If the state laboratories department designates a substance as an immediate precursor, substances which are precursors of the controlled precursor shall not be subject to control solely because they are precursors of the controlled precursor.

"4. If any substance is designated, rescheduled, or deleted as a controlled substance under federal law and notice thereof is given to the state laboratories department, the state laboratories department shall similarly control the substance under this chapter after the expiration of thirty days from publication in the federal register of a final order designating a substance as a controlled substance or rescheduling, or deleting a substance, unless within that thirty-day period, the state laboratories department objects to inclusion, rescheduling, or deletion. In that case, the state laboratories department shall publish the reasons for objection and afford all interested parties an opportunity to be heard. At the conclusion of the hearing, the state laboratories department shall publish its decision, which shall be final unless altered by statute. Upon publication of objection to inclusion, rescheduling, or deletion under this chapter by the state laboratories department, control under this chapter is stayed until the state laboratories department publishes its decision.

"5. Authority to control under this section does not extend to distilled spirits, wine, malt beverages, or tobacco as those terms are defined or used in title 5 of the North Dakota Century Code." N.D.C.C.

■ It is our opinion that Section 19–03.1–02, N.D.C.C., applies only to the State Laboratories Department when it is considering an administrative designation which would add, delete, or reschedule substances.

Before an authorized designation can initially be made by the Department, certain factors must be considered, such as potential for abuse and the pharmacological effect of such substances, including possible stimulant or depressant characteristics. When a designation is made by the Legislature such factors are deemed to have been considered.

We are also of the opinion that in saying that "Any substance which contains any quantity of methamphetamine" is a controlled substance under Section 19–03.-1–09, Schedule III, N.D.C.C., the Legislature has determined that methamphetamine in any quantity has a "potential for abuse associated with a stimulant effect on the central nervous system".

■ We conclude, therefore, that the trial court's reasons for dismissing the case and discharging the defendant would not have justified the granting of the defendant's motion for an advised verdict.

The State is not required, under Section 19–03.1–09(2)(c), N.D.C.C., to prove either quantity, potential for abuse, or stimulant effect. We believe this position is supported by what case law exists, as we shall see.

In meeting the mandate of Section 19–03.1–42, N.D.C.C.,

"Uniformity of interpretation.—This chapter shall be so applied and construed as to effectuate its general purpose and make uniform the law with respect to the subject of this chapter among those states which enact it."

we look to other decisions under similar statutes.

In Glover v. State, 14 Md.App. 454, 287 A.2d 333 (1972), the Maryland Court of Special Appeals had before it a prosecution for possession of heroin under the Uniform Controlled Dangerous Substances Act as adopted by the Maryland Legislature. The evidence in *Glover* consisted of four foil containers, each of which a chemist testified contained heroin. The chemist

testified he did not make a quantitative analysis to determine the amount of heroin in each container or the amount of substance the heroin was mixed with. The appellant argued that since there was no showing of the quantity of pure heroin in the compounds he was charged with possessing, and since a small amount of heroin in the compound would not be dangerous, there was not sufficient evidence to show he possessed a "controlled dangerous substance."

The Maryland Court rejected this argument, saying:

"It is not the other ingredients of a compound which it is unlawful to possess; it is the heroin, and the statute does not deal in quantities, minimum or otherwise. Code, Art. 27, § 277(f) defines a controlled dangerous substance as 'any drug, substance or immediate precursor in Schedules I through IV of this subheading.' 'Heroin' is sub-item b.6. of Schedule I, contained in § 279. Thus heroin, without regard to quantity, is, by legislative enactment, a controlled dangerous substance, and its possession is unlawful. The statute needs no construing. Its intent is perfectly clear." Glover v. State, *supra*, 287 A.2d 333 at 338.

The Maryland statute, Article 27, Section 279, wherein heroin is included in Schedule I, is comparable to Sections 19–03.1–03, 19–03.1–04, and 19–03.1–05, N.D.C.C., wherein heroin is also included without regard to quantity in Schedule I and is by legislative enactment a controlled substance, possession of which is unlawful. The Maryland Court's reasoning could apply to Schedule III with regard to methamphetamine as well as to Schedule I.

In United States v. Levin, 443 F.2d 1101 (C.A.8 1971), cert. denied, 404 U.S. 944, 92 S.Ct. 297, 30 L.Ed.2d 260 (1971), the court had before it a criminal prosecution for violations of certain provisions of the Federal Food, Drug, and Cosmetic Act, including the illegal sale of methamphetamine hydrochloride. The statutes construed in *Levin* were repealed by Public Law 91—513, enacted October 27, 1970. Replacing the repealed statutes is a new Act entitled "Comprehensive Drug Abuse Prevention and Control Act of 1970", which Act is similar to the Uniform Controlled Substance Act adopted in North Dakota. The statutes construed in *Levin* are not identical to Section 19–03.1–09(2)(c), N.D.C.C., but the analysis contained therein is pertinent and instructive. The applicable statutes in *Levin* prohibited the delivery or sale of a depressant or stimulant drug by anyone other than a person acting in the ordinary and authorized course of his business. Depressant or stimulant drugs were defined.

" 'For the purpose of this chapter—

\* \* \* \* \* \*

" '(v) The term "depressant or stimulant drug" means—

" '(2) any drug which contains any quantity of (A) amphetamine or any of its optical isomers; (B) any salt of amphetamine or any salt of an optical isomer of amphetamine; or (C) any substance which the Secretary, after investigation, has found to be, and by regulation designated as, habit forming because of its stimulant effect on the central nervous system;'" United States v. Levin, *supra*, 443 F.2d 1101 at 1104, quoting from 21 U.S.C. § 321.

The substance methamphetamine was later included as a "depressant or stimulant drug" under the administrative procedure heretofore set out whereby an investigation was conducted and a regulation promulgated designating methamphetamine as habit forming because of its stimulant effect on the central nervous system and because of its potential for abuse. The language of the promulgated regulation follows:

" '(b) The Director has investigated and designates all drugs, unless exempted by regulations in this part, containing any amount of the following substance as having potential for abuse and habit

forming because of their stimulant effect on the nervous system:

" 'd–, dl—Methamphetamine and their salts.' " United States v. Levin, *supra*, 443 F.2d 1101 at 1105, quoting 21 C.F.R. § 320.3, revised as of January 1, 1970.

In *Levin* a chemist identified the drugs, one of which was methamphetamine hydrochloride, but did not testify that the drugs were depressant or stimulant. The defendant in *Levin* maintained that an essential element of the offenses charged is that the drug is in fact a depressant or stimulant and that the Government failed in its proof. The Eighth Circuit Court of Appeals rejected this argument.

"We are satisfied that Congress intended that the effect of an authorized designation by the Director would be the same as if the drugs were specifically designated as dangerous in the statute. Congress did not intend with respect to drugs properly designated as dangerous that proof of depressant or stimulant effects or habit forming propensities would be an essential element of the offense. * * *" United States v. Levin, supra, 443 F.2d 1101 at 1106.

Notwithstanding that we have earlier held herein that the trial court's reasons for its dismissal do not support Allesi's motion for an advised verdict, and we have discussed decisions supporting our view, we must now consider Allesi's contention that to grant a new trial would place him twice in jeopardy, prohibited by Amendment V of the United States Constitution and Section 13 of the North Dakota Constitution.

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; *nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb*; nor shall be compelled in any

Criminal Case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." Amendment V, U.S.Const. [Emphasis added.]

"In criminal prosecutions in any court whatever, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf; and to appear and defend in person and with counsel. *No person shall be twice put in jeopardy for the same offense,* nor be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law." § 13, N.D.Const. [Emphasis added.]

■ The double-jeopardy provision of the Fifth Amendment to the United States Constitution is applicable to the States through the due-process clause of the Fourteenth Amendment to the United States Constitution. See Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed. 2d 707 (1969).

The basic policy considerations underlying the Fifth Amendment's ban against double jeopardy have been well stated in a note in the Yale Law Journal:

"Distilled, these diffuse considerations yield three rules designed to implement three particular policies. First, the double jeopardy bar on reprosecution after an acquittal makes the status of innocence meaningful and minimizes the chance that innocent men will be convicted. Without a rule of finality no procession of juries could effectively acquit a defendant, but a single jury could convict. The prosecutor could keep trying until he found an accommodating panel. Second, the rule prohibiting reprosecution after a conviction denies the prosecutor the same control over punishment. Without the rule the prosecutor could continue to prosecute until he

found a judge willing to give an 'appropriate' sentence. And if the subsequent judge imposed his sentence cumulatively the defendant would be punished twice for the same offense. The double jeopardy rule forces the prosecutor to accept the first judge's decision on sentencing just as he must accept the first jury's verdict on guilt. Finally, and most importantly, rules against reprosecution, after either prior acquittal or prior conviction, prevent the prosecutor from using criminal prosecutions to inflict unnecessary suffering upon defendants. A criminal trial warps the defendant's life and consumes his money. The Constitution allows this ordeal to be imposed only once and for reasonable cause, not repeatedly at the prosecutor's whim." Note, Twice in Jeopardy, 75 Yale L.J. 262, 278–279 (1965).

The permissibility of a retrial in the case at bar occupies the grey area of this constitutional prohibition, since we are dealing with neither an acquittal nor a conviction.

■ Before a second-jeopardy situation can exist, there must first have been an initial period of jeopardy which has terminated. As a general rule, a person is not placed in initial jeopardy until he is put on trial or the trial commences.

In United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), the Government was appealing an order dismissing, on the ground of former jeopardy, an information which charged Jorn with willfully assisting in the preparation of fraudulent income-tax returns.

Jorn was brought to trial and a jury was impaneled and sworn. The Government sought to use as witnesses taxpayers whom Jorn had allegedly aided in preparation of tax returns. After one such witness was called, but before any questioning, defense counsel suggested that such witnesses be warned of their constitutional rights. The trial judge ultimately dismissed the trial so that the witnesses could consult with attor-

neys. The case was set for retrial but was dismissed on a pretrial motion on the ground of former jeopardy. The Supreme Court held that the trial judge made no effort to exercise sound discretion nor was there a manifest necessity for the judge on his own motion to declare a mistrial. The Supreme Court therefore felt, under the circumstances, a reprosecution would violate the double-jeopardy clause of the Fifth Amendment. Regarding the attachment of initial jeopardy, the Court stated:

"* * * These considerations have led this Court to conclude that a defendant is placed in jeopardy in a criminal proceeding once the defendant is put to trial before the trier of the facts, whether the trier be a jury or a judge. See Green v. United States, *supra,* 355 U.S. 184 at 188, 78 S.Ct. [221] at 223, 2 L.Ed.2d 191; Wade v. Hunter, 336 U.S. 684, 688, 69 S.Ct. 834, 836, 93 L.Ed. 974 (1949).

\* \* \* \* \* \*

"Thus the conclusion that 'jeopardy attaches' when the trial commences expresses a judgment that the constitutional policies underpinning the Fifth Amendment's guarantee are implicated at that point in the proceedings. * * *" United States v. Jorn, 400 U.S. 470, 479, 480, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971).

We think it important to note that Justice Burger in his concurring opinion in *Jorn* said that "if the accused had *brought about the erroneous mistrial ruling* we would have a different case". In the instant case in moving for an advised verdict on grounds not justifying such a verdict, Allesi was granted a dismissal, also something he was not entitled to. In making the motion he *brought about the erroneous dismissal ruling.*

■ That jeopardy attaches when the jury is selected and sworn was reaffirmed in Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), the United States Supreme Court's most recent pronouncement on double jeopardy.

"In Downum, the Court held, as respondent argues, that jeopardy 'attached' when the first jury was selected and sworn. * * *" Illinois v. Somerville, *supra*, 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425, 433.

In the case of State v. Noel, 66 N.D. 676, 268 N.W. 654 (1936), involving a prosecution for second-degree rape wherein the defendant was convicted in the trial court, appealed the conviction and obtained a reversal of the judgment of conviction and was also granted a new trial, the court made the following comment concerning the attachment of jeopardy:

"The court was properly constituted, it had jurisdiction of the offense charged, of the defendant, and by the impaneling of the jury and proceedings in the prosecution the defendant was placed in jeopardy. * * *" State v. Noel, *supra*, 268 N.W. 654 at 656.

Certainly under any of the above rules, initial jeopardy would have attached in the case at bar when the jury was impaneled and sworn, the State had presented its case in chief and had rested prior to the trial court's erroneous dismissal of the case and discharge of the defendant.

■ It is, however, an established principle of our jurisprudence that the double-jeopardy clause does not prohibit retrial in every instance when the first trial has terminated prior to a verdict. In Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L. Ed. 974 (1949), the jury was discharged before a verdict was rendered, due to tactical considerations in a military campaign. The retrial and subsequent conviction of the defendant were affirmed by the United States Supreme Court.

"The double-jeopardy provision of the Fifth Amendment, however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed." Wade v. Hunter, *supra*, 336 U. S. 684 at 688, 689, 69 S.Ct. 834 at 837.

It is therefore necessary for us to determine under the facts of this case whether the double-jeopardy clause prohibits a retrial.

In City of Minot v. Knudson, 184 N.W. 2d 58 (N.D.1971), Knudson was charged with operating his motor vehicle while under the influence of intoxicating liquor. After being found guilty in municipal court, Knudson appealed to the district court, demanding a trial de novo. The district court, on defendant Knudson's motion, quashed the information. The State appealed from the decision of the district court. On appeal to this court, the issue of double jeopardy was raised. This court, on the basis of United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964), held that Knudson by his actions waived his double-jeopardy protection.

"We accordingly conclude that double jeopardy is not an issue in this case, because Mr. Knudson's motions have precluded him from claiming protection either under the Fifth Amendment of the United States Constitution or under Section 13 of the North Dakota Constitution." City of Minot v. Knudson, *supra*, 184 N.W.2d 58, 62.

■ In *City of Minot,* as in the case at bar, initial jeopardy had attached. Under the rule of law set forth in *City of Minot,* the defendant's conduct is important in determining the applicability of the double-jeopardy clause. We must therefore look carefully at Allesi's conduct, in deciding whether under the law he has waived his double-jeopardy claim.

■ Each case in which a double-jeopardy violation is asserted must turn upon its own facts. Downum v. United States, 372 U.S. 734, 737, 83 S.Ct. 1033, 10 L.Ed.

2d 100 (1963). Later cases of the United States Supreme Court have not retreated from this principle:

"While virtually all of the cases turn on the particular facts and thus escape meaningful categorization, see Gori v. United States, supra, Wade v. Hunter, supra, it is possible to distill from them a general approach, * * *" Illinois v. Somerville, supra, 410 U.S. 458, 464, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425, 431 (1973).

"* * * it becomes readily apparent that a mechanical rule prohibiting retrial whenever circumstances compel the discharge of a jury without the defendant's consent would be too high a price to pay for the added assurance of personal security and freedom from governmental harassment which such a mechanical rule would provide. * * *" United States v. Jorn, supra, 400 U.S. 470, 480, 91 S. Ct. 547, 554.

We have studied numerous cases involving questions related to double jeopardy without finding a case precisely in point. Our review has led us to the conclusion that the closest cases dealing with constitutionally permissible retrials where the first jury was discharged without a verdict are those involving mistrials.

As pointed out in Illinois v. Somerville, supra, the landmark decision construing the double-jeopardy clause in the context of a declaration of mistrial is United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). In Perez the declaration of mistrial was over defendant's objection. In that case the defendant was charged with a capital offense. It was held that in such a case the defendant might be retried after the trial judge had, without the defendant's consent, discharged a jury that reported itself unable to agree. In writing the opinion of the court, Mr. Justice Story commented on the problem of reprosecution after a mistrial had been declared without consent of the defendant:

"We think that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, *there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.* They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this as in other cases, upon the responsibility of the judges, under their oaths of office." United States v. Perez, supra, 22 U.S. 579, 580. [Emphasis added.]

In *Jorn* and *Somerville,* as in *Perez,* the defendant did not consent to the mistrial. The "manifest necessity" and "public justice" standards were applied to those cases to determine if the judges abused their discretion in declaring the mistrials. Since the defendant in the instant case in essence consented to the action of the trial judge, we do not believe the standards of "manifest necessity" or "ends of public justice" are applicable to this case.

■ In this case the trial judge's action dismissing the charge was precipitated by defense counsel's motion to advise the jury to acquit, relief we have decided the defendant was not entitled to. The judge's action was the result of defense counsel's initiative and was taken without objection by defense counsel. It is our view that since the defendant was not entitled to the relief he received (a dismissal) nor to the

relief he sought (an advised verdict) and since he made no objection to the relief he received, the defendant waived his right to assert the defense of double jeopardy and must now stand trial.

While not directly in point since they still deal with declarations of mistrials, certain cases are analogous to the extent they consider the effect of defendant's consent to or motion for a mistrial as it relates to barring a retrial.

In United States v. Romano, 482 F.2d 1183 (C.A.5 1973), appellants were tried before a jury and convicted of violating the Dyer Act. Appellants' first trial ended in a declaration of a mistrial. Appellants contended their second trial violated the double-jeopardy clause of the Fifth Amendment, urging the first trial ended in a mistrial because of prosecutorial misconduct and was beneficial to the prosecution. The Fifth Circuit Court of Appeals looked at the factual situation and concluded that the mistrial was declared at the instance of the appellants and thus their argument was without merit. The court quoted dicta from *Jorn* in support of its conclusion.

"It is thus apparent that the mistrial was granted at the behest of appellants, on their behalf, and because of the prosecutor's *inadvertent*[2] prejudicial opening

remarks. The law is well established that

'where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by defendants for mistrial is ordinarily assumed to remove any barrier to reprosecution, *even if the defendant's motion is necessitated by prosecutorial or judicial error.*'

"United States v. Jorn, 1971, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543,

556 (footnotes omitted) (emphasis added). * * *

United States v. Romano, *supra*, 482 F.2d 1183 at 1188.

In the case at bar the action taken by the trial judge was at the behest of Allesi.

In United States v. Beasley, 479 F.2d 1124 (C.A.5 1973), cert. denied, 414 U.S. 924, 94 S.Ct. 252, 38 L.Ed.2d 158, Beasley's first trial ended in a mistrial, but he was subsequently retried and convicted. The Fifth Circuit Court of Appeals affirmed his conviction, finding no double-jeopardy bar to the second trial. Beasley's attorney thought a question by the prosecution on cross-examination of Beasley's sister, his chief alibi witness, was prejudicial and he moved for a mistrial, which was granted.

The court cited *Jorn* for the proposition that ordinarily when the defendant makes a motion for a mistrial this removes any barriers to a reprosecution. The court noted an exception to such waiver when the mistrial motion is a result of a prosecutorial overreaching, as in Downum v. United States, *supra*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100. The court, however, found no prosecutorial overreaching which would bar a reprosecution. The court recognized in *Somerville* the defendant did not consent to the mistrial, but still quoted *Somerville* as dispositive of Beasley's claim:

"The Court there upheld a second-trial conviction where the first jury had been dismissed at the insistence of the state, over defendant's objection, following the discovery of a defect in the drafting of the indictment. *Somerville* stands for the proposition that mistrial which is the result of official error not involving 'prosecutorial manipulation', 410 U.S. at 464, 93 S.Ct. at 1070, does not bar retrial even where the defendant does not consent to the termination of the first trial short of judgment. In the present case the defendant moved for a mistrial, and since this motion was not the product of

---

[2]. We are thus not faced with a case where there is any intimation that the prosecutorial impropriety causing the mistrial arose from a fear that the jury was likely to acquit. *See* United States v. Tateo, 1964, 377 U.S. 463, 467 n. 3, 84 S.Ct. 1587, 12 L.Ed. 2d 448, 452 n. 3."

prosecutorial manipulation or over-reaching, we find no constitutional barrier to retrial and conviction." United States v. Beasley, *supra,* 479 F.2d 1124 at 1127.

We find no prosecutorial manipulation or overreaching in the case at bar. To the same effect, see also United States v. Goldstein, 479 F.2d 1061 (C.A.2 1973), U. S. appeal pending.

Lest it be argued that we have failed to consider the State ban against double jeopardy, we have examined Section 29–01–07, N.D.C.C., and the related Section 29–24–02, N.D.C.C., dealing with new trials.

"29–01–07. Only once prosecuted.— No person can be twice put in jeopardy for the same offense, nor can any person be subjected to a second prosecution for a public offense for which he has once been prosecuted and convicted, or acquitted, or put in jeopardy, except as is provided by law for new trials." N.D.C.C.

"29–24–02. Causes for granting new trial.—When a verdict has been rendered against the defendant, the court in which the trial was had, upon his application, may grant a new trial in the following cases only:

"1. When the trial has been had in his absence, if the information or indictment is for a felony;

"2. When the jurors have received out of court any evidence other than that resulting from a view of the premises, or any communication, document, or paper referring to the case;

"3. When the jurors, after retiring to deliberate upon their verdict, have separated without leave of the court or have been guilty of any misconduct by which a fair and due consideration of the case has been prevented;

"4. When the verdict has been decided by lot or by any means other than a fair expression of opinion on the part of all the jurors;

"5. When the court has misdirected the jurors in a matter of law, or has erred in the decision of any question of law arising during the course of the trial, or has done or allowed any act in the action prejudicial to the substantial rights of the defendant;

"6. When the verdict is contrary to law or clearly against the evidence;

"7. When new evidence is discovered which is material to the defense and which the defendant could not, with reasonable diligence, have discovered and produced at the trial;

"8. When the defendant, without fault or negligence on his or her part, is unable to procure a correct and complete transcript of the evidence given and the proceedings had at a trial [after a plea of not guilty]." N. D.C.C.

A narrow reading of Section 29–01–07 in conjunction with Section 29–24–02, N.D.C.C., would preclude reprosecution in every situation where a defendant was once prosecuted and placed in jeopardy, except under the specific exceptions stated in Section 29–24–02, all of which contemplate the trial to have ended in a jury verdict of guilty. Such a construction would give the defendant a license to disrupt a trial and would prohibit a new trial except for those situations described in Section 29–24–02. Statutes must be construed to avoid a ludicrous or absurd result. State v. Vietor, 208 N.W.2d 894 at 897 (Iowa 1973); People v. McFarlin, 389 Mich. 557, 208 N.W.2d 504 at 508 (1973); Perry v. Erling, 132 N.W.2d 889 at 896 (N.D.1965).

It is our view that Section 29–01–07, N.D.C.C., and Section 13 of the North Dakota Constitution must be read in the light of history. Although they had the power to do so, we do not believe that the framers of the North Dakota Constitution who created Section 13 or the members of the Legislature who drafted Section 29–01–07 or its predecessor section intended a

result different from that mandated by the Fifth Amendment to the United States Constitution. Having determined that the Fifth Amendment to the United States Constitution does not bar the State from trying Allesi, we conclude that neither Section 13 of the North Dakota Constitution nor Section 29–01–07 nor any other statute constitutes a bar to further prosecution of Allesi.

Accordingly, the order of the trial court is reversed and the case is remanded for trial.

KNUDSON and PAULSON, JJ., concur.

VOGEL, Judge (dissenting).

I regretfully dissent. I agree that each case turns on its own facts. In this case, I do not believe that the defendant concurred in the dismissal of the case against him, and I believe that he had a right to have the trial completed by the tribunal which commenced it. Since he once was in jeopardy, a dismissal without his consent cannot be followed by a retrial, in the absence of "manifest necessity" which in my view is not present here.

The holding of United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), is:

" . . . where the judge, acting without the defendant's consent, aborts the proceeding, the defendant has been deprived of his 'valued right to have his trial completed by a particular tribunal.' "

The exact language of the ruling by the trial court in the present case is as follows:

"THE COURT: Exactly, I don't see any other way out of it. It's a drug which is prohibited if two things are shown. First, that it has a potential for abuse and that it's a stimulant. Now, we don't even have enough testimony here to show that it's a stimulant.

"MR. BOSSART: He said it was.

"THE COURT: The drug in itself was but he didn't know if it contained the quantity to. We have absolutely no testimony that it has a potential for abuse as a result of this stimulant. Those are the two things that had to be proven and we don't have either one because the chemist said he can't say the amount found would be a stimulant to a human being and we have absolutely no testimony that it has a potential for abuse. Did I hear a motion to dismiss? I'll grant the motion for dismissal. The Defendant will be subject to discharge immediately.

"(Whereupon, the proceedings were concluded.)"

As in *Jorn*, "It is apparent from the record that no consideration was given to the possibility of a trial continuance; indeed, the trial judge acted so abruptly in discharging the jury that, had the prosecutor been disposed to suggest a continuance, or the defendant to object to the discharge of the jury, there would have been no opportunity to do so."

I do not agree that the defendant here provoked the ruling of the court. He made a motion for only an "advisory verdict" of not guilty, a motion specifically permitted by statute [29–21–37, N.D.C.C., superseded since the trial of this case by adoption of Rule 29, N.D.R.Crim.P.]. I do not believe that making a perfectly proper and permissible motion can constitute a consent to the making of an improper and impermissible order. In this respect we have a close parallel with *Jorn*, where a proper defense motion asking the court to instruct witnesses as to their rights resulted in an unasked-for dismissal of the jury.

Nor do I believe that there is any "manifest necessity" here for the dismissal. In Illinois v. Somerville, 410 U.S. 458, 93 S. Ct. 1066, 35 L.Ed.2d 425 (1973), there was such a necessity because of a jurisdictional defect in the indictment which could not be cured except by a new indictment. But here, where we have already held that the

lower court was in error in dismissing the case (quashing the information), there was no necessity, manifest or otherwise.

According to *Jorn*, when the defendant has not made a motion for mistrial, the court can dismiss and retry only when "a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings. See United States v. Perez, 9 Wheat., at 580." Here, the ends of public justice would have been better served by a continuation of the proceedings.

I believe this is a case which (in the words of Chief Justice Burger, concurring in *Jorn*) "represents a plain frustration of the right to have [the defendant's] case tried, attributable solely to the conduct of the trial judge. If the accused had brought about the erroneous mistrial ruling we would have had a different case, but this record shows nothing to take appellee's claims outside the classic mold of being twice placed in jeopardy for the same offense."

My view is, I believe, consistent with the dictum in State v. Panchuk, 53 N.D. 669, 207 N.W. 991 (1926), and the California cases upon which that dictum was based. We quoted in *Panchuk*:

"Once in actual jeopardy, a defendant becomes entitled to a verdict which may constitute a bar to a new prosecution; and he cannot be deprived of his right to a verdict by nolle prosequi entered by the prosecuting officer, or by a discharge of the jury, and continuance of

the cause." People v. Hunckeler, 48 Cal. 331, citing Cooley, Const.Limit. 327.

Recent California cases adhere to the same rule. Curry v. Superior Court, 2 Cal.3d 707, 87 Cal.Rptr. 361, 470 P.2d 345 (1970); Gonzalez v. Municipal Court for San Jose-Milpitas J. D., 32 Cal.App.3d 706, 108 Cal.Rptr. 612 (1973). *Curry,* in particular, is similar to the present case. The defense made a proper motion to caution the jury as to the effect of evidence, and the trial court went beyond the motion and dismissed the jury and scheduled a retrial. It was held that jeopardy had attached and that a new trial was not permissible.

I would so hold here. I would affirm the dismissal, not for the reason given by the trial court, which I agree was erroneous, but because the trial court's dismissal without the consent of the defendant terminated the action after the defendant once was in jeopardy. There was no manifest necessity for the trial court's decision, in my view, and again placing the defendant in jeopardy violates Section 13 of the North Dakota Constitution and the Fifth Amendment of the United States Constitution.

TEIGEN, Judge (dissenting).

I concur with Judge Vogel in his dissent but I still contend that, this appeal should have been dismissed on the ground that the order is not appealable by the State. I continue to adhere to my dissent reported in 211 N.W.2d at 735. In my opinion the majority have now compounded their error.