James MITCHELL, Petitioner–Appellant,

v.

Harold J. SMITH, Warden, Attica Correctional Facility, and Robert Abrams, Attorney General of the State of New York, Respondents–Appellees.

No. 128, Docket 79–2208.

United States Court of Appeals,
Second Circuit.

Argued Sept. 2, 1980.

Decided Sept. 4, 1980.

Certiorari Denied Jan. 12, 1981.
See 101 S.Ct. 879.

Barry Bassis, New York City (The Legal Aid Society, New York City, on the brief), for petitioner–appellant.

Cynthia Kean, Brooklyn, N.Y. (Eugene Gold, Dist. Atty., Brooklyn, N.Y., on the brief), for respondents–appellees.

Before TIMBERS, Van GRAAFEILAND and NEWMAN, Circuit Judges.

TIMBERS, Circuit Judge:

James Mitchell was convicted on the testimony of three eye witnesses of second degree murder in the New York Supreme Court, Kings County. He currently is serving a sentence of 25 years to life in the Attica Correctional Facility. He petitioned the District Court for the Eastern District of New York, Thomas C. Platt, Jr., *District Judge*, for a writ of habeas corpus, alleging that he was improperly retried for murder after the prosecutor's conduct provoked a mistrial at his first trial. Judge Platt denied the petition. 481 F.Supp. 22. We affirm.

Appellant was first tried for murder in January 1977. A mistrial was declared on a motion by appellant's trial counsel because of the prosecutor's cross–examination of Alice Sullivan, an eyewitness to the killing, who testified that appellant was not the man who shot the decedent.

The court ruled that the prosecutor misled the jury when he suggested to it that he had a stenographic transcript indicating that the witness had told the district attorney that she had identified a photograph of appellant as the murderer. There was no evidence that she had ever made such a statement to the district attorney and the trial court accordingly found that the prosecutor's question was "not asked in good faith."

Appellant did not raise his double jeopardy claim before his second trial. There, Miss Sullivan testified again substantially as she had at the first trial. Her testimony was impeached by the testimony of a police

detective who testified that on the day of the killing Miss Sullivan had identified a photograph of appellant as that of the murderer.

Appellant appealed his conviction in the state courts but did not raise his double jeopardy claim on his direct appeal. Concurrently, he applied to the Appellate Division, Third Department, for a state writ of habeas corpus in which he raised the double jeopardy claim for the first time. It was denied as being without merit. *State of New York ex rel. Mitchell v. Wilmot*, 67 A.D.2d 788 (3rd Dept. 1979). The New York Court of Appeals declined to entertain an appeal from the denial of the habeas petition.

## I. *Waiver*

■ Appellees argue that under New York State law appellant had an obligation to raise his double jeopardy claim prior to his second trial or, at the very latest, on direct appeal of his conviction. New York Crim.Proc. Law §§ 210.40, 470.15(3)(c) (McKinney Supp. 1979). Accordingly, appellees argue, the New York courts *could* have refused to hear appellant's state habeas corpus petition on the ground of appellant's "unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him." New York Crim.Proc. Law § 440.10(2)(c). Appellees argue that appellant's federal petition should be denied on comity grounds. *Wainwright v. Sykes*, 433 U.S. 72, 81–85 (1977).

Appellees' argument might be convincing if the state court in fact had refused to review appellant's claim on procedural grounds. On the facts of this case the argument is not convincing. The state court heard appellant's habeas petition on the merits. The purpose of the federal comity doctrine in this context is to extend federal recognition to state procedural restrictions. *Francis v. Henderson*, 425 U.S. 536, 541–42 (1976). When the state courts fail to give preclusive effect to their own procedural rules, comity concerns do not require that the federal courts give greater respect to those rules than the states themselves. *Albuquerque v. Bara*, 628 F.2d 767, 771–72 (2 Cir. 1980).

Appellees also argue that double jeopardy immunity should be deemed waived if it is not asserted at trial. We find it neither necessary nor appropriate to rule on that contention since we find that appellant's claim lacks merit. *Accord, United States v. MacQueen*, 596 F.2d 76, 81–82 (2 Cir. 1979); *United States v. DeFillipo*, 590 F.2d 1228, 1232–33 (2 Cir.), *cert. denied*, 442 U.S. 920 (1979).

## II. *Double Jeopardy*

■ The Fifth Amendment, held applicable to the states through the Fourteenth Amendment, *Benton v. Maryland*, 395 U.S. 784 (1969), and New York Crim.Proc. Law § 40.20 (McKinney Supp. 1979) provide that a person may not be tried twice for the same offense. It is well established, however, that double jeopardy immunity may be waived by the defendant's motion for or consent to a mistrial at his first trial. *Lee v. United States*, 432 U.S. 23, 32–33 (1977). The courts have come to recognize an exception to that traditional "waiver" rule when the defendant's motion for mistrial is provoked by prosecutorial "overreaching". *United States v. Dinitz*, 424 U.S. 600, 611 (1976); *United States v. Jorn*, 400 U.S. 470, 485 (1971). The Supreme Court has not clearly delineated what kind of conduct constitutes such "overreaching" as will invoke the exception. This Court, however, recently has held that such overreaching occurs when the prosecutor or judge "intentionally provokes" a mistrial in order to obtain a second opportunity to convict or, "[e]ven absent such a provocation . . . if the judicial or prosecutorial error was 'motivated by bad faith or undertaken to harass or prejudice' the petitioner." *Drayton v. Hayes*, 589 F.2d 117, 121 (2 Cir. 1979) (citation omitted).

Appellant in this case does not contend that the prosecutor at his first trial intended to provoke a mistrial. He does argue that the prosecutor's behavior was intended to prejudice appellant's prospect for an acquittal and under *Drayton* constituted "overreaching" which should have barred

the state from subjecting him to a second trial. Under a correct reading of *Jorn* and its progeny, however, the prosecutor's conduct in this case cannot be said to have reached the level necessary to preclude a retrial.

 Mere inadvertent error on the part of a prosecutor is not sufficient to justify barring retrial. What is required is "bad faith conduct [that] is not an inevitable part of the trial process; rather, it signals a breakdown in the integrity of the judicial proceedings." *Drayton, supra,* 589 F.2d at 121. Accordingly, courts have been loath to bar retrial absent clearly prejudicial behavior which, if not proven to have been intended to impair the proceedings, at least could be considered to be flagrant overreaching. *E. g., United States v. Martin,* 561 F.2d 135, 139–40 (8 Cir. 1977); *United States v. Kessler,* 530 F.2d 1246, 1254–58 (5 Cir. 1976); *United States v. Gentile,* 525 F.2d 252, 257 (2 Cir. 1975), *cert. denied,* 425 U.S. 903 (1976).

 It is not clear in this case whether the prosecutor's error was intentional or merely inadvertent. At one point the trial court said the prosecutor's question was "not asked in good faith", while later it said the prosecutor "made a mistake". The district court below held that the "finding of unintentional provocation is not without support in the trial record." We agree.

First, the trial court's finding that the prosecutor lacked a good faith basis for his question is not the same as a finding that he was motivated by bad faith. The prosecutor knew that he had been told that Miss Sullivan had identified appellant; and he may have been merely mistaken about the source of the information. Perhaps the strongest argument against finding intentional bad faith here was the ease with

which Miss Sullivan's testimony was impeached at the second trial. In fact, at the *Wade* hearing before appellant's first trial even the defense attorney admitted that the witness had given "diametrically opposite testimony on three occasions", and that he was reluctant to call her as a witness. Under those circumstances, it is unlikely that the prosecutor would resort to bad faith efforts to impeach.

The adoption of a gross negligence standard suggested by appellant would constitute a significant liberalization of this doctrine which would be inconsistent with the prior holdings of this Court.[1] In *United States v. Gentile, supra,* we endorsed the view that under these circumstances double jeopardy should be reserved for instances in which "there has been an abuse of the trial process resulting in prejudice to the accused . . . such as to outweigh society's interest in the punishment of crime." 525 F.2d at 257 n.3, quoting *United States v. Jorn, supra,* 400 U.S. at 492 (Stewart, J., dissenting). Accordingly, we have read the exception relied upon by appellant narrowly. *Id.* at 257 & n.4; *United States v. Estremera,* 531 F.2d 1103, 1110 (2 Cir.), *cert. denied,* 425 U.S. 979 (1976).

The argument in favor of a narrow application of this exception to the waiver rule appears especially compelling on the facts of this case. In *Gentile* we stressed that barring a retrial would be inappropriate where the mistrial was declared in the "sole interest of the defendant." We reasoned that we did not want to hinder the sound discretion of the trial judge to protect the criminal defendant from inadvertent prejudicial error by an expansive application of the double jeopardy doctrine:

"[W]e do not think a trial judge must take one horn or the other of the dilemma of refusing to recognize what he con-

---

1. A "gross negligence" standard has been mentioned in two opinions of the Fifth Circuit, although it does not appear that any prosecutor's conduct amounting only to gross negligence has barred a retrial. In *United States v. Kessler, supra,* 530 F.2d at 1256, the court equated "prosecutorial overreaching" with "'gross negligence or intentional misconduct.'" The internal quotation was from *United States v. Beasley,* 479 F.2d 1124, 1126 (5 Cir.), *cert. denied,* 414 U.S. 924 (1973). *Beasley* had relied on *Wade v. Hunter,* 336 U.S. 684 (1949), for the proposition that retrial is not barred when a mistrial results from prosecutorial error which does "*not* amount to gross negligence or intentional misconduct." 479 F.2d at 1126. (emphasis added). Nothing in *Wade v. Hunter, supra,* suggests that a mistrial resulting from a prosecutor's gross negligence would bar a retrial.

siders a valid claim of prejudice or granting a severance in order to forfend a successful claim of double jeopardy." 525 F.2d at 258.

In view of the equivocal nature of the trial court's opinion of the prosecutor's conduct in this case, it would be manifestly unfair to require the judge either to grant a mistrial, which would free the defendant and bar further prosecution, or allow the tainted questioning to remain in the case and go to the jury. If we were to adopt a standard under which conduct less than clear "bad faith" conduct constituted "overreaching", such a result would be inevitable. If a prosecutor deliberately provokes a mistrial in order to secure "a more favorable opportunity to convict," *Downum v. United States*, 372 U.S. 734, 736 (1963), that type of bad faith conduct would preclude retrial. And it may also happen that a prosecutor's overreaching is so intentional, so unfair, and so prejudicial that the sanction of barring further prosecution is warranted.

Appellant has failed to establish that the prosecution here engaged in bad faith conduct undertaken to harass or prejudice his case. Accordingly, this is not the exceptional case in which prosecutorial "overreaching" will bar a retrial following a declaration of mistrial on the defendant's motion.

Affirmed.