STATE of North Dakota,
Plaintiff-Appellee,

v.

Frank BERGER, Defendant-Appellant.

STATE of North Dakota,
Plaintiff-Appellee,

v.

Robert BERGER, Defendant-Appellant.

STATE of North Dakota,
Plaintiff-Appellee,

v.

Donald BERGER, Defendant-Appellant.

Crim. Nos. 506–508.

Supreme Court of North Dakota.

Nov. 4, 1975.

Rehearing Denied Nov. 21, 1975.

C. J. Schauss, Mandan, for defendants-appellants.

Donald L. Jorgensen, Asst. State's Atty., Dickinson, for plaintiff-appellee.

SAND, Judge.

Defendants Frank Berger, Robert Berger, and Donald Berger appeal from convictions of assault and battery by the Court of Increased Jurisdiction, Stark County, on February 20, 1975, claiming they were subjected to double jeopardy and that there was insufficient evidence against them.

On the morning of November 30, 1974, at approximately three o'clock, the defendants proceeded to the house of Gail Burton, allegedly to attend a party. Upon arrival and after they were informed that Mrs. Burton was not at home, fighting broke out involving the intruders and two of Mrs. Burton's sons, Anthony McKeown and Patrick McKeown.

As a result of this incident, each of the defendants, Frank Berger, Robert Berger, Donald Berger, Kenny Berger and James Berger, on December 5, 1974, were separately charged with the offense of assault and battery.

Subsequently, the attorney for the defendants Frank, Donald and Robert, by telephone arranged with the court to have the three appealing defendants arraigned immediately prior to the call of the calendar on January 7, 1975. But, prior to January 7, the trial court, pursuant to defendants' attorney's request, set a date certain for trial at which time the defendants would be arraigned, rather than at the call of the calendar.

The trial court, on its own, consolidated the cases and set the trial date for January 31, 1975.

On January 31, 1975, the appealing defendants appeared in person and with counsel. Also appearing were the two other parties charged with assault and battery under identical criminal complaints. No arraignment was held at this time. The case against James Berger, one of the parties involved, was dismissed.

Trial commenced, witnesses were sequestered at the request of counsel, and three witnesses were examined by the State and cross-examined by counsel for the defendants.

During the noon recess the court realized or discovered that the three defendants (Frank, Robert and Donald) had not been arraigned and that no pleas had been entered for them.

The trial court then informed counsel of the failure to have procured record pleas and gave counsel approximately forty minutes to research the matter.

The trial court reconvened and inquired of defendants' attorney if defendants were prepared to waive the arraignment and enter pleas to the criminal complaints and proceed with the trial. Defendants' attorney informed the trial court that the defendants would neither waive arraignment nor enter any plea at this time.

The trial court then severed the trial of these three defendants from Kenny Berger, who had been arraigned, and proceeded to arraign the three defendants. The defendants' attorney informed the trial court that he and his clients stood mute and that the court had made no final determination with respect to the proceedings had.

The trial court thereupon declared a mistrial as to these three defendants. The defendants continued to stand mute, whereupon the trial court entered pleas of not guilty for each of them. The court then set February 20, 1975, as the day for the new trial and the defendants waived jury trial with the proviso that such waiver would not prejudice any right to file motions with the court concerning the proceedings had up to that time.

Subsequently, the defendants filed a written motion for dismissal of the action on the grounds that each of them had once been in jeopardy for the offense of assault and battery charged against them.

On February 20, appellants renewed their motion to dismiss, again premised upon their alleged jeopardy in the first trial, and again the court denied defendants' motion.

The court then heard the evidence in the cases against the defendants, found them guilty, and pronounced sentence.

Defendants now appeal this conviction, claiming they were twice put in jeopardy and also that the evidence against them was not sufficient to establish a finding of guilty beyond a reasonable doubt.

Section 13 of the North Dakota Constitution provides, in part, "No person shall be twice put in jeopardy for the same offense."

The North Dakota Century Code, Section 29-01-07, provides as follows:

"No person can be twice put in jeopardy for the same offense, nor can any person be subjected to a second prosecution for a public offense for which he has once been prosecuted and convicted, or acquitted, or put in jeopardy, except as is provided by law for new trials."

The Fifth Amendment to the United States Constitution provides, in part, "Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb."

■ The double-jeopardy prohibition of the Fifth Amendment is applicable to the States through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

■ The general rule is that a person is put in jeopardy when his trial commences, which in a jury case occurs when the jury is empaneled and sworn, and in a non-jury trial when the court begins to hear evidence.

This rule was recognized in *State v. Allesi*, 216 N.W.2d 805 (N.D.1974), in which the court quoted from the Supreme Court of the United States, at page 813, as follows:

" ' * * * These considerations have led this Court to conclude that a defendant is placed in jeopardy in a criminal proceeding once the defendant is put to trial before the trier of the facts, whether the trier be a jury or a judge. See *Green v. United States, supra*, 355 U.S. 184 at 188, 78 S.Ct. [221] at 223, 2 L.Ed.2d 199; *Wade v. Hunter*, 336 U.S. 684, 688, 69 S.Ct. 834, 836, 93 L.Ed. 974 (1949).

*    *    *    *    *    *

" 'Thus the conclusion that "jeopardy attaches" when the trial commences expresses a judgment that the constitutional policies underpinning the Fifth Amendment's guarantee are implicated at that point in the proceedings. * * ' *United States v. Jorn*, 400 U.S. 470, 479, 480, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971)."

In the case at hand, the trial of the defendants had commenced. Three witnesses had been called and had testified for the State. Generally this would be sufficient to support a finding of initial jeopardy if the rule were rigidly followed without regard for other facts.

In *Serfass v. United States*, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975), the United States Supreme Court said, "It is true that we have disparaged 'rigid, mechanical' rules in the interpretation of the Double Jeopardy Clause."

■ The double jeopardy clause does not prohibit retrial in every instance when the first trial has terminated prior to a verdict. *State v. Allesi, supra,* at 814.

The United States Supreme Court, in *Wade v. Hunter,* 336 U.S. 684 at 688, 69 S.Ct. 834 at 837, 93 L.Ed. 974 (1949), stated:

"The double-jeopardy provision of the Fifth Amendment, however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed."

■ Each case in which a double jeopardy violation is asserted must turn upon its own facts. *Downum v. United States,* 372 U.S. 734, 737, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963).

■ The Supreme Court of the United States, in *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425 (1973), with reference to attachment of jeopardy, said:

"But in cases in which a mistrial has been declared prior to verdict, the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial."

In *Somerville, supra,* 93 S.Ct. at 1070, the Court further stated:

"A trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial. If an error would make reversal on appeal a certainty, it would not serve 'the ends of public justice' to require that the Government proceed with its proof when, if it succeeded before the jury, it would

automatically be stripped of that success by an appellate court."

The Court also stated:

"But where the declaration of a mistrial implements a reasonable state policy and aborts a proceeding that at best would have produced a verdict that could have been upset at will by one of the parties, the defendant's interest in proceeding to verdict is outweighed by the competing and equally legitimate demand for public justice."

The Court also noted that:

"The broad discretion reserved to the trial judge in such circumstances has been consistently reiterated in decisions of this Court."

Therefore, it is necessary for this court to determine under the facts of this case whether the double jeopardy clause prohibits the declaration of a mistrial and the granting of a new trial.

Absent a waiver by the defendant of his right not to be twice put in jeopardy, the court must show a sound reason for the exercise of its discretion in declaring a mistrial.

The landmark decision construing the double jeopardy clause in the context of a declaration of mistrial is *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). The United States Supreme Court stated there:

"We think that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in

capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this as in other cases, upon the responsibility of the judges, under their oaths of office."

In *Gori v. United States,* 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961), the court previously underscored the breadth of a trial judge's discretion to declare a mistrial.

"Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment."

In *Somerville, supra,* the Supreme Court held that a trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial.

In *Somerville,* the defendant had gone to trial on an indictment which was fatally defective under Illinois law. The court declared a mistrial, the indictment was amended, and defendant was convicted at the new trial. The court held that the mistrial met the "manifest necessity" requirement, since the trial court could reasonably have concluded that the ends of public justice would be defeated by having allowed the trial to continue.

Our court has recognized the established principle of jurisprudence that the double jeopardy clause does not in every instance prohibit retrial where the first trial is terminated prior to a verdict. In *State v. Allesi,* 216 N.W.2d 805 (1974), our court, relying in part on *Wade, supra,* held that where defendant's motion for an advised verdict of not guilty led to the dismissal of the charge by the trial judge, a relief to which the defendant was not entitled, he in effect waived his right to assert the defense of double jeopardy and must stand trial.

■ Manifest necessity and the ends of public justice are the basic controlling matters in determining whether a mistrial was properly granted so that the defendant may be retried. See *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), and *Illinois v. Somerville, supra.*

In *Jorn,* a case involving a charge of a fraudulent income tax return, the government's witnesses were taxpayers whom the defendant had allegedly aided in preparation of making returns. After the first of these witnesses was called, but prior to commencement of direct examination, defense counsel suggested that the witnesses be warned of their constitutional rights. There was some question whether the prosecution had adequately warned the witnesses when the Internal Revenue Service first contacted them. The judge inquired of the other witnesses who were similarly situated, whereupon the prosecutor responded that the witnesses had been warned by the IRS upon initial contact. The judge, however, expressed the view that the warnings were probably inadequate and then proceeded to discharge the jury. Upon retrial the question of double jeopardy was raised. We would note that the reason for declaring a mistrial was for the benefit of the witnesses rather than for the benefit of either the prosecution or the defendant. We do not have such a situation in the instant case. The Court, in a plurality opinion, in effect affirmed that the defendant had been placed in jeopardy and retrial was in violation of his constitutional right.

■ If a verdict of conviction would have to be reversed on appeal due to an obvious procedural error, adequate grounds exist for declaring a mistrial and manifest necessity exists for retrial. *Lovato v. New Mexico,* 242 U.S. 199, 37 S.Ct. 107, 61 L.Ed. 244 (1916).

In the instant case, the first trial was commenced without first arraigning or requiring the defendants to plead to the charge. Upon discovering this procedural defect, the trial judge asked the defendants whether they wished to waive their right to arraignment or to plead now. The defendants refused to waive arraignment or to plead, but stated to the court that no disposition had been made of the trial in progress, thereby precipitating a decision by the court. The court deemed that a manifest necessity existed for the ends of public justice which required that a mistrial be declared and that the defendants be retried. The defendants did not waive the right to arraignment or to plead, nor did the defendants object to any procedure announced by the court. The remarks of the defendants' attorney indirectly prompted the court to declare a mistrial, and when it did, the attorney failed to object.

The defendants stood mute and attempted to reserve whatever objections may have been available to them. The defendants permitted the court to go through with a new trial without objection, hoping for a favorable outcome, and now, after a conviction, bring this objection.

It thus becomes necessary for us to examine the law and rules of criminal procedure as they existed at the time.

In *State v. Bronkol,* 5 N.D. 507, 67 N.W. 680, 681 (1896), the North Dakota Supreme Court held that arraignment and entry of plea were required under North Dakota law before trial could be legally held. The court stated:

"The sole function of a trial jury in a criminal case is to determine an issue of fact joined between the accused and the state; and, until such issue is joined by plea to the indictment, there is no warrant in the law for either calling or swearing a jury. The statute is imperative that such issue shall be joined unless the indictment is disposed of either by motion or by demurrer; and, where the defendant stands mute, the plea of not guilty is required to be entered of record in his behalf. [Citation omitted.] To enter upon the trial after swearing a jury, but before the entry of a plea to the indictment, has frequently been held to be such prejudicial error as will entitle the accused to a new trial."

In *State v. Wester,* 204 N.W.2d 109 (N.D. 1973), the court was faced with a situation where defendant went to trial without having pled and the court pronounced judgment against him on the theory that he had pled guilty. The court held that when no plea is taken and judgment is pronounced on the theory that a guilty plea has been entered, the judgment is a nullity, and, therefore, void.

The trial court was required to recognize and take into account the existing law on the subject based upon case law, rules and related items.

The trial court was aware that the law announced in *Bronkol* has not been modified. Rule 10 of the North Dakota Rules of Criminal Procedure was adopted in 1973 and reads as follows:

"Arraignment shall be conducted in open court and shall consist of reading the indictment, information, or complaint to the defendant or stating to him the substance of the charge and calling on him to plead thereto. He shall be given a copy of the indictment, information, or complaint before he is called upon to plead. If the defendant appears at the arraignment without counsel, he shall be informed of his right to counsel as provided in Rule 44."

Nothing in Rule 10 suggests that the arraignment is merely a formality. Under the explanatory note we find the following:

"It is an important step in the criminal case, since it formulates the issue to be tried. The United States Supreme Court has held, however, that failure to comply with the requirements of a proper arraignment is an irregularity that does not warrant a reversal of a conviction if not raised before trial. [*Garland v. Wash-*

*ington,* 232 U.S. 642, 34 S.Ct. 456, 58 L.Ed. 772 (1914)]."

Rule 10 also superseded § 29–13–09, N.D.C.C., which had provided as follows:

"Neither a failure to arraign nor an irregularity in the arraignment shall affect the validity of any proceeding in a cause if the defendant pleads to the indictment or information or proceeds to trial without objecting to such failure or irregularity."

The explanatory note states that by superseding Section 29–13–09 and by superseding Chapter 29–11 by Rule 10 it is not intended to revive technical objections to criminal proceedings which were available to defendants on appeal prior to the enactment of Chapter 132, Session Laws 1939 (Chapter 29–11, N.D.C.C.).

Section 29–13–09, N.D.C.C., had never been construed by this court, and, as a matter of interest, it was not the product of a legislative enactment but, rather, was the product of the code reviser. The reviser note states as follows:

"This section is new and is intended to make complete the law of this state relating to arraignment. It is the rule which now is followed in most jurisdictions and should be incorporated in our statutes to clarify the subject."

The provisions of this statute had little or no value to the trial judge to determine the appropriate law at the time.

The reviser note does not appear to be in harmony with 21 Am.Jur.2d *Arraignment* § 452, page 453, wherein it states:

"The purpose and necessity of an arraignment are to fix the identity of the accused, to inform him of the charge against him, and to give him an opportunity to plead. An arraignment is commonly regarded as essential to a valid conviction of felony, unless waived by the accused."

There are, however, jurisdictions which have reached conclusions comparable to that in *Garland, supra.* In *Garland* the absence of arraignment was not discovered by any party or raised as an issue until after the trial was completed, whereas in the instant case, after the court informed the defendants that they had not been arraigned, the defendants refused to waive arraignment, and further refused to plead to any arraignment at that time, and, for that matter, refused to agree or object to anything, but merely stood mute.

The explanatory note to Rule 33, North Dakota Rules of Criminal Procedure, states as follows:

"This rule does not affect the power of the court to declare a mistrial and order a new trial on its own motion if such circumstances arise prior to verdict or finding of guilt as to warrant such."

The trial court may have been aware of the *Garland* case, but at the same time the North Dakota Supreme Court has not indicated a departure from the *Bronkol* case and the adoption of the *Garland* ruling.

On a careful analysis of the *Garland* case, we conclude that it militates against the position of the appellants here rather than supports their position. The Court, in *Garland,* said:

"A waiver ought to be conclusively implied where the parties had proceeded as if defendant had been duly arraigned, and a formal plea of not guilty had been interposed, and where there *was no objection made* on account of its absence until, as in this case, the record was brought to this court for review. It would be inconsistent with the due administration of justice to permit a defendant under such circumstances to lie by, say nothing as to such an objection, and then for the first time urge it in this court." [Emphasis added.]

This gives additional support to the action of the trial judge.

■   Even though our criminal judicial process employs and relies heavily upon the adversary system, it nevertheless is not a

game or a contest wherein an adversary may capitalize on the lapses or errors of his adversary or of an official, but rather is a process striving for fairness in the administration of justice. Consequently, error committed in procedure which is not fatal in itself but can be corrected should not serve to defeat the ends of public justice.

In retrospect, we believe the trial judge could have proceeded by another alternative. At the time the trial judge discovered that the defendants had not been arraigned he could have asked each defendant to state his plea on a nunc pro tunc basis, and upon refusal by the defendants to plead, the trial judge could have entered a plea of not guilty for each of the defendants remaining mute. But the statements by defendants' counsel about not having made a disposition of the trial underway could be considered an objection which prompted the court to proceed as it did.

The procedure employed by the trial judge, namely, mistrial and a retrial, did not unduly harm the defendants. They had the benefit of knowing what evidence was being presented and thus be better prepared for cross-examination on the retrial. In this respect the testimony heard at the aborted trial was comparable to that of a preliminary hearing. In this instance the defendants were not deprived of having their case heard or completed before the same tribunal because the case was heard by the judge without a jury (bench trial) and the same judge presided.

The recent ruling by the United States Supreme Court that defendant had been subjected impermissibly to double jeopardy in the case of *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), wherein a juvenile was first subjected to juvenile court adjudicatory proceedings resulting in a finding that the juvenile had violated a criminal statute and a subsequent finding that defendant was unfit for treatment as a juvenile and was then tried as an adult in the regular court, does not apply here and is readily distinguishable from the instant case. We have no difficulty, particularly in

view of the earlier case of *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), that a proceeding under the juvenile system which has reached final disposition constitutes jeopardy and a subsequent adult trial of the same person on the same offense constitutes double jeopardy, which is not permissible. In the instant case, the first trial was far from complete.

The statement in *Breed v. Jones, supra,* that the defendant was subjected to the burden of two trials for the same offense and was twice put to the task of marshaling resources against those of the State, and twice subjected to the heavy personal strain, which such experience represents, has no application or validity to the instant case. In the instant case, the defendants, in reality, benefited by having the first proceedings declared a mistrial, at which point the defendants had not placed any defense witnesses on the stand but had an opportunity to hear and cross-examine the witnesses of the State. The strain upon the defendants could not have been any more than the strain upon the victims who were required to testify twice, were subjected to cross-examination each time, and had to take off or surrender their own time for court appearances.

We, therefore, conclude that the trial judge exercised sound discretion in declaring a mistrial and providing for a retrial of the defendants on the charge. Under these circumstances, this procedure did not constitute double jeopardy as prohibited by the Fifth Amendment of the United States Constitution and Section 13 of the North Dakota Constitution.

Defendants also claim that the evidence presented at trial was not sufficient to establish a prima facie case of assault and battery against them or to support a verdict of guilty.

The defendants were charged under Section 12–26–02, N.D.C.C., with assault and battery. The statute reads: "A battery is any willful and unlawful use of force or violence upon the person of another."

■ To constitute a battery there must be an actual touching, however slight, of the person assaulted. *State v. Cruikshank,* 13 N.D. 337, 100 N.W. 697 (1904).

6A C.J.S. Assault & Battery § 70, page 440, states:

"This touching, need not be in the form of a blow but may consist of any sort of contact; it may include every touching or laying hold, however slight, of another or his clothes in an angry, revengeful, rude, insolent, or hostile manner; or the direct or indirect application of force either by the aggressor himself, or by some substance or agency placed in motion by him.

". . . It may also take the form of merely pushing or shoving him, or detaining him, or snatching or wresting something from his possession."

The defendants claim that the evidence presented by the State does not show active participation in the assaults by Donald or Frank and that the evidence established the defense of self-defense as to Robert. However, no evidence was brought to our attention and we found none in the record to support a self-defense theory. We therefore disregard this claim.

Although it is true that there was some uncertainty in identification and some conflict in the testimony, there was evidence that each of the defendants had committed assault and battery on the complainants.

■ In a criminal case tried to the court without a jury, the court is not required to make findings of fact. It either finds the defendant guilty or not guilty in the same manner as a jury. The court is the trier of the facts and its findings are in this respect treated the same as a jury verdict upon review in the appellate court. *State v. Neset,* 216 N.W.2d 285 (N.D.1974); *City of Minot v. Spence,* 123 N.W.2d 836 (N.D.1963). This court, in *State v. Kaloustian,* 212 N.W.2d 843 (N.D.1973), on page 845, said:

". . . At the appellate level we do not substitute our judgment for that of the jury or the trial court where the evidence is conflicting, if one of the conflicting inferences reasonably tends to prove guilt and fairly warrants a conviction."

■ There was ample evidence to establish and support a finding of guilty against Frank and Robert Berger. The evidence against Donald consisted primarily of a witness thinking that Donald pushed Pat around: "He never hit him but was pushing him." The witness also states, "the one with the brown coat [Donald] I am pretty sure was the one that hit Pat downstairs, but I better not say for sure but there were three of them standing there. I am not sure which one hit Pat it happened so fast."

Considering the evidence in the light most favorable to the trial court's judgment and conviction, we find that the judgment is supported by substantial evidence.

The testimony of all of the witnesses also supports a finding that the defendants acted in concert.

Section 12–02–04, N.D.C.C., provides as follows:

"All persons concerned in the commission of a crime, whether it is a felony or a misdemeanor, and whether they directly commit the act constituting the offense or aid and abet in its commission, or not being present, have advised and encouraged its commission, and all persons counseling, advising, or encouraging children under the age of fourteen years, lunatics, or idiots to commit any crime, or who by fraud, contrivance, or force, occasion the drunkenness of another for the purpose of causing him to commit any crime, or who by threats, menaces, command, or coercion compel another to commit any crime, are principals in any crime so committed."

The provisions of this section apply in the instant case. The defendants all admitted they traveled together, arrived together, and were present at the Burton home at three o'clock in the morning while the

fighting was going on. We are not implying that mere presence is sufficient to support a finding of guilty. But not one of them left when the fighting started, nor did any one of them do anything to stop it. Neither did the defendants do anything to protect or shield Pat or Anthony McKeown. Defendants all acted in support of each other.

In *State v. Rosencranz,* 40 N.D. 93, 168 N.W. 650 (1918), the defendant was charged with assault and battery with a dangerous weapon. The defendant claimed that there was no evidence that he had ever had a weapon of any kind, only that he had struck the victim with his fists. The court cited the predecessor of Section 12–02–04, Section 9218 of the Compiled Laws of 1913, and held that the defendant had aided and abetted his son, who used the dangerous weapon, and that the statute was applicable to defendant's offense and made him guilty as a principal.

■ In the case at hand, there is ample evidence that all of the defendants aided and abetted in the commission of the battery.

Judgment of the trial court is affirmed.

ERICKSTAD, C. J., and PAULSON and PEDERSON, JJ., concur.

VOGEL, Justice (dissenting).

Except for those portions of the opinion discussing the substantive crime involved, I dissent. Specifically, I believe that syllabus ¶ 5 misstates the constitutional law involved and leads to an erroneous result.

We are agreed that jeopardy had attached at the time the mistrial was declared. In a jury trial jeopardy attaches when a jury is impaneled and sworn, and in a nonjury trial jeopardy attaches when the court begins to hear evidence. *Serfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). We are agreed that a defendant may be subjected to a second trial under certain limited circumstances even after jeopardy has once attached.

Thus retrials are permitted where juries have been unable to reach verdicts [*United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824)], and where defendants have asked for a mistrial and obtained it [*United States v. Tateo,* 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964)], and where convictions are reversed on appeal. Beyond this, and ever since *Perez, supra,* courts have been allowed to declare mistrials and yet try the defendant anew only in cases where "manifest necessity" requires or "where the ends of justice would otherwise be defeated." The Supreme Court has very properly declined "to formulate rules based upon categories of circumstances which will permit or preclude retrial" [*United States v. Jorn,* 400 U.S. 470, 480, 91 S.Ct. 547, 555, 27 L.Ed.2d 543, 554 (1971)], and it has used the word "discretion" to describe the powers of the trial court. But this kind of discretion surely is one of the most limited known to the law. It is an extremely narrow discretion to be "used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *United States v. Perez, supra,* 22 U.S. (9 Wheat.) 579, at 580, quoted in *United States v. Jorn, supra,* 400 U.S. 470, at 481, 91 S.Ct. 547.

It requires "scrupulous exercise" [*Jorn,* at p. 485, 91 S.Ct. 547] and is always subject to close scrutiny on review. *United States v. Walden,* 448 F.2d 925 (4th Cir. 1971), *affirmed* on rehearing en banc by an equally divided Court, 458 F.2d 36 (1972), *cert. denied* 409 U.S. 867, 93 S.Ct. 165, 34 L.Ed.2d 116 (1972), 410 U.S. 969, 93 S.Ct. 1436, 35 L.Ed.2d 705 (1973).

In fact, the case law seems to indicate that the "discretion" will be upheld only where a reversal of a conviction would be compelled if the case proceeded to a conclusion. Certainly this was true in *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), where the defect in the indictment was incurable, and the Court said that the proceeding was one which "at best would have produced a verdict that could have been upset at will by one of the

parties." 410 U.S. 458, at 471, 93 S.Ct. 1066, at 1074. This is not such a case.

The "discretion" of the trial judge does not extend to cases where the trial judge, no matter how conscientiously, comes to an erroneous belief that there is a fatal jurisdictional defect in the proceedings.

". . . the trial judge must still take care to assure himself that the situation warrants action on his part foreclosing the defendant from a potentially favorable judgment by the tribunal." *Jorn*, 400 U.S. 470, at 486, 91 S.Ct. 547, at 557.

". . . where the judge, acting without the defendant's consent, aborts the proceeding, the defendant has been deprived of his 'valued right to have his trial completed by a particular tribunal.'" *Jorn*, 400 U.S. 470, at 484, 91 S.Ct. 547, at 557, quoting from *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed.2d 974, 978 (1949).

The majority opinion tries to force the facts of this case into either the mold of "manifest necessity" [by stating that this court "has not indicated a departure from the *Bronkol* case"[1] and that "the law announced in *Bronkol* has not been modified"], or into the mold of a dismissal consented to by the defendants [by stating that the defendants' attorney "indirectly prompted the court to declare a mistrial, and when it did, the attorney failed to object" and that the statements of defendants' counsel "about not having made a disposition of the trial underway could be considered an objection which prompted the court to proceed as it did"].

Like the foot of the ugly stepsister which could not be squeezed into Cinderella's slipper, this case cannot be forced into the *Somerville* mold or the consent mold.

The facts of the present case appear to be comparable to those in *United States v. Walden, supra*. In *Walden*, the trial judge terminated the trial of eleven defendants after two jurors saw one or more of the defendants being led from the courtroom in handcuffs during a lunch recess. The trial judge mistakenly interpreted the incident as disqualifying the jurors, which created a manifest necessity to declare a mistrial. The appellate court considered these facts in the light of the *Jorn* decision and held that even though the judge acted out of concern for the best interests of the defendants, his abortion of the trial was without manifest necessity and constituted an abuse of discretion. *Walden*, 448 F.2d at 928–929.

The appellate court stated:

"*Jorn* is apparently the penultimate if not the end product of a 'trend toward reducing the occasions on which criminal defendants may be made to "run the gauntlet twice."' . . . *Jorn* is, we think, a significant departure from prior controlling case law."

The court noted that as a result of *Jorn*, "unquestionably the trial judge's 'sound discretion' to abort a trial has been considerably narrowed" and that *Jorn* "all but eliminates trial judge motivation as an element to be considered in determining whether an aborted trial bars reprosecution." *Walden*, 448 F.2d at 928.

"*Jorn* put upon [the trial judge] a duty to exhaust all other reasonable possibilities before deciding to foreclose defendants' option to proceed. The trial judge must make a 'scrupulous exercise of judicial discretion.' *Jorn*, at 485, 91 S.Ct. 547. The scrupulous exercise of that discretion means that he must seek out and consider all avenues of cure to avoid trial abortion." *Walden*, 448 F.2d at 929.

The appellate court in *Walden* held that the trial judge abused his discretion by not seeking a "cure" such as continuing the trial with the twelve remaining jurors. In the present case, the trial judge erred in failing to exhaust all other reasonable possibilities before declaring a mistrial. One possibility, continuing the trial after arraignment, was not considered in depth. Nor was the possibility considered of enter-

---

1. *State v. Bronkol*, 5 N.D. 507, 67 N.W. 680 (1896).

ing a plea of not guilty for the defendants and then proceeding. In fact, there was no need to do anything, because the omission of an arraignment was a mere irregularity, as I show below.

## I

The *Bronkol* case stated the law of North Dakota from 1896 to 1943. *Bronkol* held that arraignment was jurisdictional. But in 1943, as the majority opinion notes, the Legislature adopted Section 29–1309, N.D. R.C., which stated that failure to arraign was a mere irregularity. The statute effectively invalidated the holding of *Bronkol.* True, the statute was later superseded by the adoption of Rule 10, N.D.R.Crim.P., but that rule, except for two immaterial changes,[2] is identical to Rule 10, F.R. Crim.P., under which failure to arraign is a mere irregularity. *United States v. Hart,* 477 F.2d 1087, 1089 (10th Cir. 1972); *Garland v. Washington,* 232 U.S. 642, 34 S.Ct. 456, 58 L.Ed. 772 (1914). As we recognized in *In re Estate of Elmer,* 210 N.W.2d 815, 820 (N.D.1973), when we took a rule from the Federal Rules of Civil Procedure, we did so

> "with knowledge of the interpretations placed on it by the Federal courts. Although we are not compelled to follow those interpretations, they are highly persuasive and, in the interest of uniform interpretation, we should be guided by them."

I conclude that the holding of *State v. Bronkol* has been invalidated, first by statute and then by rule, ever since 1943.

The trial judge erred if he relied upon *State v. Bronkol* as good law. The note to Rule 10, N.D.R.Crim.P., correctly states that failure to arraign is a mere irregularity. Mistrials cannot be justified by mere irregularities.

I further conclude that an erroneous interpretation of existing State law by a court does not fall within the very narrow and limited discretion available to trial judges, and that the declaration of the mistrial in the present case therefore fits into the mold of the *Jorn* case and cannot be forced into the mold of the *Somerville* case, where there was a genuine jurisdictional defect in the proceedings.

No doubt the trial judge believed he was acting in the interests of the defendants. But his declaration of a mistrial necessarily subjected them "to the same personal strain and insecurity regardless of the motivation underlying the trial judge's action." *United States v. Jorn, supra,* 400 U.S. 470, at 483, 91 S.Ct. 547, at 556; *United States v. Walden, supra,* 448 F.2d 925, at 928.

## II

Of course, if a defendant requests or consents to the mistrial, he is precluded from claiming double jeopardy. [But see *United States v. Dinitz,* 492 F.2d 53, *affirmed* en banc per curiam 504 F.2d 854 (5th Cir. 1974), *cert. granted* 420 U.S. 1003, 95 S.Ct. 1445, 43 L.Ed.2d 761 (1975), holding that a motion for mistrial by a defendant, made necessary by the ejection of his lead counsel from the trial, did not constitute a bar to a plea of double jeopardy; and *United States v. Walden, supra,* 448 F.2d 925, at 930, rejecting a flat rule that a motion for mistrial constitutes a waiver of a plea in bar.] But neither silence nor irrelevant remarks can be twisted into consent. Here, the defendants did nothing, either standing mute or suggesting the obvious to the court, namely, that the present trial had not been disposed of.[3] I cannot join in the suggestion that such equivocal conduct is equivalent to consent to a mistrial. It is, in my view, conduct indicative of nonconsent.

---

**2.** The North Dakota rule adds a provision for informing a defendant who appears at the arraignment without counsel of his right to counsel as provided in Rule 44. It also adds complaints to indictments and informations as charging documents.

**3.** The transcript contains only these statements of defense counsel on this point:

> "MR. SCHAUSS: I think the position of the Defendants is not that we desire an arraignment, we do not waive the defect of the trial having commenced without an

What is required in order to constitute consent of the defendants is an active, overt, explicit, and voluntary request for or agreement to the declaration of a mistrial. "Failure to object" is not enough. Defendants had no duty to assist the prosecution in creating an error-free trial.

The law simply is that there is double jeopardy, in the absence of "manifest necessity" or impending defeat of the ends of public justice, unless the defendant *consents.* "Consent" is the word used in *United States v. Jorn, supra,* and consent, in this context, is not to be deduced from silence.

### III

In my view, the majority decision perpetuates and magnifies the error made in *State v. Allesi,* 216 N.W.2d 805 (N.D.1974). It violates the "policy of avoiding multiple trials [which] has been regarded as so important that exceptions to the principle have been only grudgingly allowed." *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 1022, 43 L.Ed.2d 232 (1975). In fact, the unconstitutionality of the second trial in this case, it seems to me, is even more obvious than in *Allesi,* where the defendant's motion for an advisory verdict was held by the majority to have "brought about" the declaration of the mistrial.

### IV

To say that mistrial and retrial "did not unduly harm" the defendants and in fact benefited them by disclosing the State's case is to (1) disregard their right to have their trial "completed by a particular tribunal" and not be subjected to the strain and insecurity of a second trial, and (2) adopt the same arguments made by the dissenters in *Jorn, supra,* 400 U.S. 470, at 491, 91 S.Ct. 547, where the arguments were rejected by the majority, as they should be rejected here.

### CONCLUSION

In my view, the trial court went beyond its very narrow field of discretion when it erroneously held that failure to arraign created a jurisdictional error in the proceedings requiring a mistrial. Failure to arraign is a mere irregularity under Rule 10, N.D.R.Crim.P. Therefore, there was no manifest necessity to declare a mistrial and the ends of public justice were not served by the declaration of the mistrial. The defendants did not consent to the declaration of a mistrial, and each of them had a "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter, supra;* *United States v. Jorn, supra.*

Each appellant "was subjected to the burden of two trials for the same offense; he was twice put to the task of marshaling his resources against those of the State, twice subjected to the 'heavy personal strain' which such an experience represents" [*Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 1787, 44 L.Ed.2d 346 (1975)], and all with-

.  .  .  .  .

arraignment and whatever the action the Court takes we would reserve our right to object to it or raise any legal questions concerning it which might arise.

.  .  .  .  .

"MR. SCHAUSS: Your Honor, now I don't know we are now in the middle of a trial. Witnesses had been sworn, testimony taken before an arraignment can be had I think the Court on that has to make some disposition of this trial. I don't think we can interrupt a trial in the middle, arraign the Defendants and then start all over again.
"THE COURT: I agree with you fully with that respect Mr. Schauss.

"MR. SCHAUSS: Your Honor at this time I will have to enter an objection to the arraignment of these parties for the reason that the trial has commenced, that evidence has been taken in the trial, testimony of witnesses and that no disposition has been made of that. This is not a proper time or place in the trial to have an arraignment of the parties until some disposition is made of the other of the trial which was originally started.
"THE COURT: It was my intention to declare a mistrial in the first trial."

out any necessity, manifest or otherwise. I believe that the Fifth Amendment to the United States Constitution and Section 13 of the North Dakota Constitution have been violated.